# Headley *versus* Kirby.

A mere gift made in prospect of death, and professing to pass to the donee *all* of the property of the decedent, consisting of wearing apparel, a promissory note, a book of deposit in a Saving Fund Society &c., to take effect after death, is not valid as a *donatio causa mortis*, whether accompanied by delivery or not.

ERROR to the District Court, *Philadelphia*.

This was an action of *replevin* by Headley, as administratrix of the estate of Patience Kirby, deceased, against Ann Kirby, to recover from her the possession of a variety of clothing, a watch

[Headley *v.* Kirby.]

and chain, pencil case, tea spoons, trunks, a promissory note for $1600, a book of deposit in the Philadelphia Savings Fund Society, and articles of female wearing apparel, which had belonged to the deceased. They were claimed by the defendant as a gift from the decedent, as a *donatio causa mortis.*

The defendant was a sister-in-law of the decedent, who left brothers and sisters, of whom the plaintiff was one. The decedent went to the house of defendant on the 23d October, 1850, taking all her property with her, and rented a room in the house. Some of the articles were contained in two trunks; others were in a band-box, and others were hanging up in a closet in the room. The decedent died on 26th October, 1850.

Three witnesses testified as to the alleged donation. One witness said the words of the decedent were: "Ann, I am dying; all that I have is here, and all is yours; do everything for me; there are my keys, take them." Another witness testified substantially the same. A third witness testified that the words were: "Ann, I am dying; all that is here with you is yours; do the best for me when I am gone; there's the keys." It was argued that the last expression *excluded* the money in the Saving Fund. The decedent died a few minutes after the alleged donation.

The judge charged, *inter alia,* that if the facts related by the defendant's witnesses were believed by the jury, they were sufficient to establish a valid *donatio causa mortis;* and he submitted to the jury the question whether the decedent used "words sufficient to declare *her intention to give all her property to the defendant;* and, if so, did she do so under the immediate expectation of death. If so, the gift was valid as a *donatio causa mortis.*"

This part of the charge, and other parts of the answers to points or instructions of the Court, were assigned as error.

*Sheppard,* for plaintiff in error.—The policy of the law is against gifts like the present: 3 *Binn.* 370, Wells *v.* Tucker; 4 *Rawle* 62; 1 *Dow & C., N. S.* 1; 2 *Johns.* 502; 3 *Comstock* 121; *Prec. in Ch.* 300. He also cited 2 *Ves.* 431, Ward *v.* Turner; *Law Lib.* 601; 2 *Whar.* 23.

The goods and chattels were not all secured under locks and keys. The clothing was hung up in the closet; there were enough other articles in the room to fill a third trunk.

Delivery of the thing given is required by the cases, and not a delivery in the name of the thing; or a delivery of a part for all: 2 *Ves.* 431; *Prec. in Ch.* 269; 2 *Kent* 439; 2 *B. & Ald.* 551; 1 *N. & M.* 237; 1 *Murph.* 127; 8 *Humph.* 503; 7 *Taunt.* 224; 3 *Story* 755.

In this case the possession of the things given was not obtained

[Headley *v.* Kirby.]

till after the death of the decedent, and an after acquired possession is not sufficient: 4 *Grattan* 472.

The promissory note in question was payable to the deceased *on demand.* It was not transferable by delivery: *Roper on Legacies* 36; 3 *P. Wms.* 356; 5 *Gill & Johns.* 45; 2 *Ves. Jr.* 111. Where the delivery cannot pass the legal title, the gift cannot be sustained: 2 *Wharton* 22.

*Brightly*, for defendant.

*Meredith*, in reply.

The opinion of the Court, filed May 17, was delivered by

LOWRIE, J.—Though we derive the law as to *donationes mortis causa* from the Roman law, yet their rules on that subject are no guide to us in the administration of our law; for the stringent severity of their law of wills occasioned and excused much larger equitable exceptions, by way of gifts in prospect of death, than can at all be sanctioned under our much more reasonable statute of wills. But even with them these gifts were so carefully guarded that, however they might impinge upon the rules as to testamentary dispositions, they could not readily give rise to fraud; for every such gift was invalid unless proved by five witnesses present at the time, every one of whom was required to be a Roman citizen, of full age, of good character, and not related to either donor or donee, a regulation not belonging to our law of evidence.

In the Roman law (*Inst.* 2, 7, 1; 2 *Domat.* 4, 1, 3, 2–6), as well as in ours (2 *Ves. Jr.* 120; 2 *Swanst.* 98), these donations are regarded as of the same nature as testamentary dispositions, and such is manifestly their character. We shall therefore take but a one-sided view of such gifts, if, in considering them, we neglect the spirit of our law of wills; and it is not necessary here to point out the care which some courts have taken to prevent this exception to the law of wills from making any further invasions upon that law.

So far as regards property, a will is the declaration of one's intention as to the disposition of it after his death; and our law on that subject is very clear in defining the form of such a will. Considering that our present statute is substantially a mere republication of the law as it has existed ever since 29 Charles 2, it is perhaps too late to attempt without legislative direction to reclaim it from the exceptions which have been made in favor of these donations; but we may and must restrain the effect of those exceptions, so as to prevent them from becoming themselves a general rule.

The gift in the case before us professes to embrace all the donor's property, and to be made in prospect of death, and is there-

[Headley v. Kirby.]

fore a will, if it receive the sanction of law. The claim that such a thing can be is a startling consequence of the exceptions in favor of *donationes mortis causa*, and it is not possible to say that such a consequence may not be arrived at, if we follow the analogies of these exceptions, without looking at our statute, and without regarding the maxim, *quod contra rationem juris receptum est, non est producendum ad consequentia*.

This case is so entirely peculiar in its character, that, if we take our statute of wills as the general rule for such dispositions, as we are bound to do, and treat the cases of *donationes mortis causa* as exceptions which are not to be extended by way of analogy, then we are clear of all embarrassment as to the principle on which the case is to be decided. It is not pretended that any gift like this has ever been held good, and it may be safely declared, that no mere gift made in prospect of death and professing to pass all one's property to another, to take effect after death, can be valid under our statute of wills, no matter what delivery may have accompanied it. If this is not true, then it is plain that the statute of wills, so far as it is intended to exclude all modes of disposing of personal property at death which it does not provide for, is repealed by the decisions of the courts.

It is not necessary to point out the danger of sustaining such a donation as this, for no thinking mind can fail to see it, and it was this very consideration that led to the precautions which are provided in the statute on the subject of nuncupative wills. We cannot even glance at these precautions without seeing that they were designed to defeat a gift sustained by such evidence as was given in this case, and to prevent oral dispositions in the nature of last wills from being made under such suspicious circumstances. The court below ought to have instructed the jury that such evidence could not establish a *donatio mortis causa*, or to have ruled out the whole evidence as insufficient.

Judgment reversed and new trial awarded.