## Syndenham Krumrine, Exr. of Henry Krumrine, deceased, *v.* P. E. Grenoble et al., Trading as the Grenoble Store Co., Appellants.

*Contract—Sale of store—Evidence.*

Defendants purchased from Krumrine, plaintiff's intestate, a store, and undertook in writing " to assume and pay a certain judgment or so much thereof as now remains unpaid, or less any amount thereof that said Krumrine may be liable to pay himself; and also to pay any and all indebtedness belonging to the store, and save him harmless from the payment thereof." It appeared that Krumrine had paid a portion of a judgment. The owner of the judgment agreed to accept defendants' note in satisfaction of a certain amount of it. A balance of the judgment was paid by Krumrine's estate to the owner of the judgment. Defendants made certain payments in cash and merchandise to Krumrine on account of this balance, and finally gave him their note for the amount remaining unpaid. *Held,* that Krumrine's executor was entitled to recover from defendants the amount which they owed to Krumrine on their assumption to pay the judgment.

*Evidence—Competency of witness—Offer—Act of June* 11, 1891—*Assignment of error—Practice.*

The Supreme Court will not consider an assignment of error to the rejection of an offer of testimony, if the witness offered. is only competent under the exception contained in the act of June 11, 1891, P. L. 287, and the offer does not set forth sufficient to enable the court to determine whether or not the witness is within the exception.

It seems that the act of June 11, 1891, merely qualifies the surviving party to testify to relevant matters occurring between or in the presence of himself and another person who is a competent witness and has testified against him in reference to such matters. By MR. JUSTICE McCOLLUM.

Argued April 17, 1894.   Appeal, No. 185, July T., 1893, by defendants, from judgment of C. P. Centre Co., Jan. T., 1891, No. 17, on verdict for plaintiff.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ.   Affirmed.

Assumpsit on agreement in writing.   [See collateral issue in Mingle v. Rossmann, 161 Pa. 366.]   Before FURST, P. J.

Plaintiff's statement was as follows:

" The demand of the plaintiff in the above stated action is founded upon a certain article of agreement between Henry Krumrine, late of Gregg township, deceased, and the defendants, dated March 20, 1888, under and by virtue of which, the

said plaintiff agreed to sell to the said defendants a certain stock of merchandise owned by him, together with all the fixtures in the storeroom, and also all book accounts, notes and assets of every description in connection with the store and business bought by the plaintiff from the Pennsvalley Banking Co., and formerly owned by I. J. Grenoble. In consideration of which the said defendants agreed to assume and pay a certain judgment against Henry Krumrine and in favor of the Pennsvalley Banking Co., or so much as remained unpaid, and also agreed to pay any and all indebtedness belonging to the store or connected therewith, contracted by said Henry Krumrine since he took charge of said store and came into possession thereof, and also the said defendants agreed to save and keep the said Henry Krumrine harmless and indemnified against the payment of the said indebtedness; and the said defendants, further to carry out the terms of said agreement, executed a bond of indemnity in the penal sum of three thousand ($3,000) dollars, dated the 22d day of March, 1888, to indemnify ' the said Henry Krumrine, his executors, administrators and heirs, of and from all actions, suits, costs, demands, charges, judgments, executions and demands whatsoever which shall at any time hereafter come against the said Henry Krumrine, his executors, administrators and heirs, by reason of any bill, bonds, specialties, promise or contract for or concerning the said mercantile business,' copies of which said agreement and bond are hereto annexed and asked to be considered a part of this statement.

" The plaintiff further avers that, after making the said agreement, the said Henry Krumrine became liable and was compelled to pay for said defendants three certain judgments obtained against the said Henry Krumrine in the Court of Common Pleas of Centre county, in favor of Weimer, Wright & Watkins, one thereof to No. 144 of Jan. Term, 1889, amounting to $173.70 with interest from the 1st of January, 1889, and costs, amounting to $32.21; another thereof to No. 145 Jan. Term, 1889, for $175.12 with interest from Dec. 29, 1889, and costs amounting to $16.90; and the other thereof to No. 174 of Jan. Term, 1889, for $172.56 with interest from 22d of January, 1889, and costs amounting to $14.00; that all of said judgments were obtained against the said Henry Krumrine and he

compelled to pay the same, in violation of the covenants and obligations contained in said agreement of March 20, 1888, and said bond of indemnity of March 22, 1888. Plaintiff further avers that said Henry Krumrine has since died and letters testamentary have been duly issued upon his estate to the plaintiff above named and that the amount of said Weimer, Wright & Watkins judgments have not been in any way repaid, either to said Henry Krumrine, or to the plaintiff, since his decease. Plaintiff further complains that the said Grenoble Store Co. is also indebted to the plaintiff in the further sum of thirteen hundred and fifty ($1,350) dollars, with interest from the 8th day of May, 1888, on account of the following note, now in the hands of said plaintiff, and which came into his hands as part of the assets of said estate of Henry Krumrine deceased, namely:

" ' $1,350.00. SPRINGS MILLS, Pa., May 8, 1888.

" ' One day after date, we promise to pay to the order of H. Krumrine thirteen hundred and fifty dollars, with interest from date, without defalcation, value received.

(Signed) " ' GRENOBLE STORE CO.'

" And thereon we certify that the amount of said three judgments, together with the amount of said note, remains due and unpaid to the said plaintiff, as per annexed statement."

The "annexed statement" contained above mentioned items.

The agreement annexed to plaintiff's statement was as follows:

" Memoranda of agreement made and concluded this 20th day of March, A. D., 1888, by and between Henry Krumrine, of Gregg township, Centre county, Pennsylvania, of the first part, and P. E. Grenoble, Eve Weaver, John Rossman and Daniel Bartges, of the same place, of the other part, witnesseth:

" That, for and in consideration of the premises hereinafter mentioned, the said party of the first part hereby agrees to sell and transfer and by these presents does sell and transfer unto the said parties of the second part all his stock of merchandise, consisting of dry goods, notions, groceries, queensware, hardware, glassware, clothing, hats, caps, boots and shoes, drugs, tinware and everything contained in the store room formerly occupied by I. J. Grenoble, together with all fixtures appurtenant; also all the books, accounts, notes and evidences of indebtedness of the said Henry Krumrine arising out of the said business contracted since the said party of the first part

purchased from the Pennsvalley Banking Company; also the lease for the rooms now occupied by the said party of the first part and the dwelling house and buildings connected therewith and all and every the property purchased by said Krumrine from the Pennsvalley Banking Company and formerly owned by the said I. J. Grenoble.

" For and in consideration of which, the said parties of the second part agree to assume and pay a certain judgment against Henry Krumrine and in favor of the Pennsvalley Banking Company, or so much thereof as now remains unpaid, or less any amount thereof that said Krumrine may be liable to pay himself; and also agree to pay any and all indebtedness belonging to the store or connected therewith contracted since said Henry Krumrine took charge of said store, and save and keep him harmless from the payment thereof. Possession to be given at once and the rent from now on to be paid by the said parties of the second part," with signatures and seals of parties, and transfer by Krumrine of an insurance of $8,000 on the goods.

The bond was as follows:

" Know all men by these presents, That we, P. E. Grenoble, Eve Weaver, John Rossman and Daniel Bartges, are held and firmly bound unto Henry Krumrine, of Spring Mills, Centre county, Pennsylvania, in the sum of three thousand ($3,000) dollars, lawful money of the United States of America, to be paid to the said Henry Krumrine, his certain attorneys, executors, administrators or assigns. To which payment well and truly to be made, we do bind ourselves, our executors, administrators and heirs, jointly and severally by these presents. Sealed with our seals, dated the 22d day of March, A. D., one thousand eight hundred and eighty-eight.

" Whereas, the mercantile business which was heretofore conducted by the said Henry Krumrine has this day been sold to the said P. E. Grenoble, Eve Weaver, John Rossman and Daniel Bartges, and all the assets in the mercantile business, consisting of book accounts and notes taken for book account of the said Henry Krumrine, have been this day assigned to the said P. E. Grenoble, Eve Weaver, John Rossman and Daniel Bartges, who, in consideration whereof, engaged to pay the debts of the said Henry Krumrine which were contracted for

goods, etc., for the store and for goods ordered and not yet received, provided said goods so ordered will be taken into the store, and to save harmless said Henry Krumrine from all claims against him from said business.

" Now the condition of this obligation is such that, if the said P. E. Grenoble, Eve Weaver, John Rossman and Daniel Bartges shall and will from time to time and at all times hereafter well and sufficiently save, defend and keep harmless and indemnified the said Henry Krumrine, his executors, administrators and heirs, of and from all actions, suits, costs, demands, charges, judgments, executions and demands whatsoever which shall at any time hereafter come against the said Henry Krumrine, his executors, administrators and heirs, by reason of any bills, bonds, specialties, promise or contract for or concerning the said mercantile business, then this obligation to be null and void; otherwise to be in full force and effect."

Plaintiff called E. C. Krumrine and other witnesses to prove his case, and rested, and defendant called their witnesses and rested. Plaintiff then called E. C. Krumrine in rebuttal.

John Rossman was then called on part of defendants. By Mr. Love : We propose to contradict E. C. Krumrine. Objected to that it was before the death of Henry Krumrine. By the Court : You can prove nothing prior to the death of Henry Krumrine. [1]

After the trial an exception was allowed to the above ruling nunc pro tunc, with direction that the offer and exception be placed after the evidence of E. C. Krumrine called in rebuttal for plaintiff. The offer and exception were placed in the paper-book before Krumrine's testimony in rebuttal.

Appellants in their paper-book state that " they offered to contradict E. C. Krumrine by John Rossman, intending to deny Grenoble's authority to make any arrangement with E. C. Krumrine for himself or his father, on behalf of appellants, to show that no such settlement was ever contemplated by the parties, and to show further that appellants never signed or delivered a note for $8,037, as testified to by Krumrine " in his testimony in chief.

The court charged in part as follows :

" [These two papers must be considered as part and parcel of one transaction, which was the sale of this property to these

defendants, and, by this agreement and by this penal bond, the
defendants undertook to save harmless the said Henry Krum-
rine from all debts, contracts and liabilities that he owed at
that time by reason of this business for the purchase of the stock
or for the goods that were actually in the store, or that were
then ordered and were to go into the store.   There is one little
expression in the agreement which, if it stood alone, might
cause some trouble.   The words are :  ' Or less any amount
thereof that said Krumrine may be liable for himself ; ' but,
when taken in connection with the full agreement and with the
bond, it is not of any particular consequence here, for the reason
that it possibly and very properly may be considered that whilst
this judgment of the bank, on its face, was $9,450, there had
been at this time payments made by Mr. Krumrine to the bank
by which that judgment, although its face represented $9,450,
was really only $8,037 ; and the subsequent conduct of the
parties would indicate that they treated upon the basis of that
judgment being $8,037.] [2]

  " In addition to these two written papers and in addition to
the Pennsvalley Banking Company's judgment, it is shown that
Mr. Krumrine was indebted to Weimer, Wright & Watkins in
three several judgments for goods purchased for this store.
About that there is no dispute here. . . .

  " I believe it is an undisputed fact that on the 14th of April,
1888, these defendants in the suit we are trying, Grenoble,
Weaver, Rossman and Bartges, gave, by some arrangement, to
the Pennsvalley Banking Company their judgment note, dated
the 14th day of April, 1888, for $6,000.   That was to be ap-
plied as a payment on the judgment that the banking company
held against Henry Krumrine, and it has been so received.
That left unpaid on the judgment $2,037.   The plaintiff claims,
in this case, the balance that is due on that judgment, $2,037,
less certain credits thereon, and the amount that is due on the
three judgments of Weimer, Wright & Watkins.

  " You will notice that the judgment given by these defend-
ants to the Pennsvalley Banking Company was on the 4th of
April, 1888, a date subsequent to both the agreement and the
bond.   The consideration that these parties were to pay is fixed
definitely by their solemn agreement on the 20th and 22d of
March ; and by that agreement and bond they covenant and

agree to pay the indebtedness that Mr. Krumrine owed, contracted in the purchase of this store. [There is a clause in the agreement which could be properly applied to the condition of the Pennsvalley Banking Company's judgment, that whilst on its face it appeared to be $9,450, certain payments were made which reduced it to $8,037. We say to you that, under the evidence in this case, these defendants assumed to pay the balance that was due on the judgment, so far as Krumrine owed it; and if, on the day they purchased, he owed $8,037 on that judgment, these defendants stood in his shoes and owed him, just him, that much money which they were to pay in liquidation of the indebtedness;] [3] and if they paid it to the Pennsvalley Banking Company, they are entitled to a credit on the agreement with Henry Krumrine, just as if they had paid these three small judgments of Weimer, Wright & Watkins.

" Mr. Grenoble testifies in this case and says that $1,786.46, less $181.72, or $1,604.76, has been paid on account of the $2,037, or is applicable as a payment upon it. Mr. E. C. Krumrine, a son of Henry Krumrine, swears that in this list of credits that Mr. Greenoble has claimed, there are two which are incorrect; that the first item of May 8, 1888, $515.70, was a payment that was made by Mr. Grenoble on a note that E. C. Krumrine owed in the bank of Reynolds & Co., of this town, and not a payment upon the balance due on the judgment in favor of the Pennsvalley Banking Company; and he tells you the circumstances under which that was paid. He also testifies that the payment of $100 on the 5th of October, 1888, is a duplication of a payment that is set forth on the 11th of Feburary, 1889, of $108.25; that a check had been sent to him where he was residing, in West Virginia, and it was returned protested; and that the check was afterwards forwarded to 'Squire Boal for collection, and the costs of protest, interest and expenses made that check $108.25, so that these two items represent but one payment of $108.25.

" Now, if you find from the evidence that Mr. E. C. Krumrine is correct in that, then there would be a credit on this balance of $2,037 of nearly a thousand dollars. The plaintiff will submit a calculation, showing it accurately; and the defendants may also submit a calculation. If Mr. Grenoble is correct, then there would be a credit on the $2,037 of $1,604.76. Just as

you find these two items of $515.70 and $100, just as you will find what is the correct credit to be deducted from the balance due on the Pennsvalley Banking Company's judgment; and to whatever that balance is you will add whatever is due on these three judgments of Weimer, Wright & Watkins, with interest from the time the several amounts were due and the costs that were paid, because the bond of indemnity was to save Krumrine, his heirs, executors or administrators, harmless from these claims; and the gross amount, less credits, would constitute the amount of your verdict in this case. [If these items exceed what was due the plaintiff, the defendant would be entitled to a verdict for the amount certified in his favor. We say to you that there is no evidence here from which we can say to you that the defendant is entitled to recover. The only question is the true amount that is due the plaintiff. I have said, with regard to the Pennsvalley Banking Company's judgment, that there were certain credits that Krumrine was entitled to; but there is no evidence that he was entitled to any credit that reduces the judgment below $8,037; and that seems to be the fixed amount of his liability on the day that these defendants assumed to pay that judgment.] " [4]

Defendants' points were as follows:

" 1. That the evidence in the cause clearly shows that the liability of the defendants upon the agreement offered in evidence was limited to the amount of the note for $6,000 in favor of the Pennsvalley Banking Company and the city indebtedness of Henry Krumrine, and that no recovery can be had by the plaintiff in this action for any part of the difference between said note for $6,000 and the amount of the note of Henry Krumrine in favor of the Pennsvalley Banking Company. *Answer:* This point we cannot affirm. The evidence shows that, subsequent to this agreement and to the execution of this bond, some person—I think it was Mr. Krumrine's son—called upon the cashier of the bank and wanted to make arrangements with him; but he would only agree to take these defendants' obligation for the sum of $6,000. It was the bank that fixed the $6,000 and not these defendants. In other words, he would not take these defendants for the full amount of the judgment, but he would take their obligation for a part of it; and they executed their obligation for that part; but this was subsequent to their entering into this agreement and bond." [5]

" 2. If the jury find from the evidence in the cause that the amount of the liability of the defendants as to the judgment of the Pennsvalley Banking Company was liquidated by giving the note of $6,000, then there can be no recovery in this suit for any surplus due from Henry Krumrine to the said banking company on his said judgment to the said banking company. *Answer :* This point we refuse. We have explained to you just how these defendants came to give their note for $6,000." [6]

" 3. That the demand of the plaintiff in the action being based upon a certain promissory note of the defendant to the plaintiff in the sum of $1,350 and on the three judgments paid by the said Henry Krumrine to Weimer, Wright & Watkins, no recovery can be had in this suit for any sum Henry Krumrine paid on the judgment of the Pennsvalley Banking Company against him. *Answer :* This point we refuse, first, because this note is not received in evidence ; and, secondly, that the defendants are liable to pay any balance that was due by Henry Krumrine and for which he was liable on the judgment of the Pennsvalley Banking Company at the period of time they assumed to pay the balance." [7]

" 4. That the only question that can be submitted to the jury is the liability of the defendants upon the judgment paid by the said Henry Krumrine to Weimer, Wright & Watkins and the payments by the defendants to the said Henry Krumrine and to other parties at his direction of the sums of money testified to by I. J. Grenoble to have been paid by him to the said Krumrine of the funds belonging to the defendants. *Answer :* This point we also refuse. There is other evidence in the cause as to what these payments are ; and two of the payments which Mr. Grenoble claims as applicable to this balance, and to which I have already called your attention, Mr. E. C. Krumrine denies and says that one is a duplication of another payment and that the other relates to a payment on a distinct note not in controversy here. Under these instructions you must find how much is due from these defendants to the plaintiff and render a verdict accordingly." [8]

Verdict and judgment for plaintiff for $1,738.18.

*Errors assigned* were (1) ruling; (2–8) instructions; quoting bill of exception and instructions.

*John G. Love* and *C. P. Hewes,* for appellants.—The evidence of Rossman was admissible: Roth's Est., 150 Pa. 261.

The agreement was uncertain and ambiguous, and parol evidence was admissible to complete its terms: McGinity v. McGinity, 63 Pa. 38; Aldridge v. Eshleman, 46 Pa. 420; Steamboat Co. v. Brown, 54 Pa. 77; Martin v. Berens, 67 Pa. 460; Barnhart v. Riddle, 29 Pa. 92; Gould v. Lee, 55 Pa. 99; Hoopes v. Beale, 90 Pa. 82; Breneman v. Furniss, 90 Pa. 186; Bown v. Morange, 108 Pa. 69; Glass Co. v. Storms, 125 Pa. 268.

*James A. Beaver, John M. Dale* with him, for appellee.—Plaintiff declared on the agreement, the note and the judgments.

The assignment of error to the ruling was not in proper form.

There is no ambiguity in the agreement and it was properly construed and the case properly submitted.

Opinion by Mr. Justice McCollum, Jan. 7, 1895:

The ruling complained of in the first specification of error was not excepted to on the trial, and the directions in the opinion and order allowing an exception nunc pro tunc were not complied with.   The rejected offer was incomplete because it failed to show what was proposed to be proven by the witness whose competency to testify to matters occurring in the lifetime of Henry Krumrine was dependent upon and qualified by the act of June 11, 1891.   That act created an exception to the general rule under which the witness was incompetent to testify to such matters, and the offer should have contained enough to enable the court to determine whether it was within the exception.   But we think it did not and for that reason we cannot convict the court of error in rejecting it.   The question whether it was competent to prove by Rossman the matters which the appellants now say they intended to prove by him is not on this record, and we do not decide it.   The writer, however, speaking for himself alone, is of the opinion, that the act of 1891 merely qualifies the surviving party to testify to relevant matters occurring between or in the presence of himself and another person who is a competent witness and has testified against him in reference to such matters.   In this view of the act we discover nothing in the testimony of E. C.

Krumrine which qualified Rossman to testify to matters occurring in the lifetime of Henry Krumrine.

The learned court below held that, under the agreement between the parties, the defendants were liable for the amount Krumrine owed on the Pennsvalley Bank judgment, and that so much thereof as they had not paid was recoverable in this action. This ruling involved a construction of the agreement and a consideration of the pleadings. The undertaking of the defendant was "to assume and pay a certain judgment against Henry Krumrine and in favor of the Pennsvalley Banking Company, or so much thereof as now remains unpaid, or less any amount thereof that said Krumrine may be liable to pay himself." The agreement appears by its date to have been made on the 20th of March, 1888, and the face of the judgment was then $9,450. On the 12th of April following it was reduced by writing filed to $8,037, but whether this reduction was effected by payments made by Krumrine before or after the agreement was written the evidence does not inform us. It is probable however that the payments by which the judgment was so reduced were made before the agreement and that the application of them to the judgment was made afterwards. The undisputed testimony is that the defendants made their note to the bank for $8,000 which the latter was requested but declined to accept and credit upon the judgment, expressing however a willingness to accept their note for $6,000 in satisfaction of that amount of it. The defendants made their note for the last mentioned sum which was accepted by the bank in conformity with its offer. This payment left a balance of $2,037, for which Krumrine was still responsible to the bank and which his estate subsequently paid. But the defendants recognized their liability to him for this balance and let him have from time to time cash and merchandise on account of it. Moreover they settled with him at one time and finding that they then owed him $1,350 on the judgment, they gave their note for it, a copy of which is attached to the statement in the case. All these matters are established by credible and uncontradicted evidence, and from them it appears that the court's construction of the agreement accords with the understanding of the parties to it. As this construction gives effect to the manifest intention of the parties and is not condemned by the

language of the agreement considered as a whole, we cannot say there is error in it.

Did the court err in holding that the defendants were liable in this action for the amount they owed Krumrine on their assumption of the bank judgment? We think not. The suit was based on the agreement which contained their assumption of it and no exception was taken to the admission of the evidence in relation to the amount they assumed and the payment they made in reduction of it. The case was tried precisely as if the balance due on the bank judgment had been specially mentioned in the statement as an item of the plaintiff's claim.

The specifications of error are overruled.

Judgment affirmed.