Mabry C. Brumbach, to the use of John Swavely, Assignee, etc., v. James C. McLean, Administrator of the Estate of Adam Johnson, deceased. Appeal of William F. Kitchin.

*Mortgage—Contested ownership of mortgage—Practice, C. P.*

Where two parties under different assignments are claiming the ownership of a mortgage, and one of the parties has issued a scire facias, it is proper for the court to direct that the scire facias shall be proceeded in to judgment, and then to award an issue between the two equitable claimants, to determine the facts by a jury and the law by the court.

In a contest as to the ownership of a mortgage, the evidence for the plaintiff tended to show that K., the original owner of the mortgage, made a parol assignment of it to W. on December 20, 1875. It also appeared from the evidence that W. subsequently made an assignment to creditors,

and his assignee transferred the mortgage to plaintiff. The evidence for the defendant showed that on December 24, 1875, K. made a general assignment for creditors to A. Subsequently on March 19, 1881, K. specifically assigned the mortgage to F. and L., who assigned it to plaintiff. Twenty years after the assignment for creditors of K., plaintiff secured a judgment in the name of the legal owner on the mortgage. During these years neither the assignee nor the creditors made any assertion of ownership, and the estate of the insolvent had been settled, and the assets distributed. *Held*, that the plaintiff had under the circumstances of the case a color of title sufficient to give him a right to demand of another claiming the mortgage that he should establish by competent evidence his right to it.

*Evidence—Competency of witness—Party dead—Act of June* 11, 1891.

In a contest to determine the ownership of a mortgage between two parties claiming under an assignment from the original owner of the mortgage, the original owner is a competent witness under the Act of June 11, 1891, P. L. 287, to prove that he made a parol assignment to the person under whom plaintiff claimed, although such person is dead, if another witness has already testified to being present and hearing the alleged parol contract.

Argued Feb. 28, 1898. Appeal, No. 337, Jan. T., 1897, by defendant, from order of C. P. Berks Co., May Term, 1896, No. 45, discharging rule to mark judgment to use of William F. Kitchin. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ. Reversed.

Rule to mark judgment to use of William F. Kitchin, and to stay execution. Before ENDLICH, J.

The facts appear by the opinion of the Supreme Court.

At the trial defendant in the interpleader offered to prove by Dr. E. C. Kitchin, under whom both parties to this issue claim title to the mortgage in suit, that he and Jeremiah Weaver borrowed $2,000 from one John Swavely, not the plaintiff in this issue, nor in any way related to or connected with him; that to secure the payment of the money so borrowed they gave a joint bond to the said John Swavely, and that the money borrowed was divided between Kitchin and Weaver; that in December, 1875, Swavely asked to have the bond paid; that Dr. Kitchin told Weaver that he was not prepared to pay his half and that Weaver agreed to pay the whole of that bond; in consideration of which Dr. Kitchin was to assign to him the mortgage in suit; that when this agreement was made, Weaver

gave Kitchin a receipt for the mortgage and an agreement to allow him $1,200 therefor, which was for the specific purpose of the payment of this John Swavely bond; that Kitchin then brought the mortgage to Weaver's house, and found there William Yocum, David B. Mauger and Jeremiah Weaver; that, referring to the agreement between himself and Weaver, he said, "Here is my part of the undertaking," or words to that effect; that no conversation ensued, and he retired; that two days thereafter Jeremiah Weaver made a general assignment for the benefit of creditors, and that the witness thereupon and thereafter considered himself discharged from the undertaking which Weaver had failed, on his part, to perform; also to show by the witness on the stand that when this mortgage was put up at public sale in July, 1880, the witness having learned that John Swavely, the plaintiff here, contemplated purchasing the mortgage at that sale, gave him notice that the mortgage did not belong to Jeremiah Weaver or his assignees, and that the purchaser at that sale would acquire no title to it; that the receipt and agreement of Jeremiah Weaver in evidence was delivered to witness and remained in his possession for several years; that he was requested to attend one of the meetings of the auditor in Jeremiah Weaver's estate; that he attended that meeting, though he made no claim and was not examined; that he left this paper on the table of the auditor, and never knew thereafter where it was until it turned up in the hands of John Swavely, the plaintiff, and that he didn't give that receipt and agreement to George K. Lorah as his assignee.

Plaintiff objected as follows: It appearing that Dr. E. C. Kitchin, the witness now offered, was a party to the contract, which the testimony of the plaintiff tends to establish, being a contract under which the mortgage in question was transferred or assigned by the said Dr. E. C. Kitchin to Jeremiah Weaver, and it appearing that Jeremiah Weaver is now deceased and that his interest in the said mortgage has passed to the plaintiff, the said Dr. E. C. Kitchin is not a competent witness to testify to anything pertaining to the contract which the plaintiff's testimony tends to establish. Moreover, all the matters proposed to be proved by the witness having occurred prior to the death of the said Jeremiah Weaver, and it appearing that the proposed witness, Dr. E. C. Kitchin, is a surviving or re-

maining party to the thing and contract in action, and, moreover, that his interest is adverse to the right of said Jeremiah Weaver, who is deceased, he is not a competent witness to testify to any matter occurring before the death of the said Jeremiah Weaver. For the foregoing and other reasons, the witness proposed is incompetent to testify to the matters proposed.

The Court: The ruling of the court is that the witness is incompetent to testify and cannot be sworn to show any of the facts alleged in the offer. Exception for defendant.

Defendant offered to proved by Dr. E. C. Kitchin that the notes offered in evidence as having been presented to the auditor of Weaver's assigned estate by the Pottstown National Bank, National Bank of Boyertown and all the notes of E. C. Kitchin payable to the order of Jeremiah Weaver were not given for indebtedness of Kitchin to Weaver, but that those notes were for their common benefit, and they were discounted and the proceeds divided between Kitchin and Weaver; and further that on December 22, 1875, at the time of the assignment of Jeremiah Weaver for the benefit of his creditors, that Dr. E. C. Kitchin was not indebted to him one dollar or anything.

Plaintiff objected, because the witness is incompetent to testify to it.

The Court: Same ruling; exception for defendant. [17]

The court discharged the rule to mark the judgment to W. F. Kitchin, and to stay the execution. [1]

*Errors assigned* among others were (1) the order of the court discharging rule; (17) rulings on evidence, quoting the bill of exceptions.

*Richmond L. Jones*, with him *Rothermel & Mauger*, for appellant.—The assignee of a mortgage takes it discharged of the equities of persons not parties to it, of which he has no notice: Mott v. Clark, 9 Pa. 399; Bigley v. Jones, 114 Pa. 510.

Dr. Kitchin was clearly a competent witness under the act of May 23, 1887, having assigned his interest in the mortgage nearly eighteen years ago, and in the lifetime of Jeremiah Weaver, because of whose death he is now held incompetent: Turner v. Warren, 160 Pa. 336; Darragh v. Stevenson, 183 Pa. 397.

Moreover the witness clearly became competent under the Act of June 11, 1891, P. L. 287, after Manger and Yocum testified, upon the trial, to a conversation relating to an alleged contract between the witness and the deceased party, which occurred in their presence or hearing: Roth's Est., 150 Pa. 261.

The title of William F. Kitchin to the mortgage in suit is a perfect and complete legal record title, and no evidence was adduced on the trial, allowing John Swavely to establish his alleged equitable title, which in any way affected or impaired the title of William F. Kitchin: Mott v. Clark, 9 Pa. 399; Speer v. Evans, 47 Pa. 141; Pepper's App., 77 Pa. 373.

*Cyrus G. Derr*, with him *S. M. Meredith*, for appellee.—E. C. Kitchin, having assigned the mortgage in question to Jeremiah Weaver, and Jeremiah Weaver being deceased, the said Kitchin was incompetent to testify to any facts tending to injuriously affect the title of Weaver to the said mortgage.

The delivery of the mortgage by Kitchin to Weaver and the taking of the receipt or memorandum therefor, signed by Weaver, were jointly a sufficient transfer of the said mortgage and the debt secured thereby: Bispham's Principles of Equity, sec. 167.

The mortgage in question having, after its delivery by Kitchin, and after the taking by him of the receipt of Weaver, been appraised as part of the assigned estate of Weaver and sold by the assignee of Weaver for the sum of $875, which money was distributed among the creditors of Kitchin upon claims for which Weaver was Kitchin's surety, Kitchin and all persons claiming under him are estopped from questioning the validity of the title of Swavely, who paid the said sum of $875 for the mortgage.

The appellant, in order to successfully claim the said mortgage as against the prior transfer, must show affirmatively that he paid a valuable consideration therefor and that he had no notice of the prior transfer.

It affirmatively appears that Charlotte K. Filbert and George K. Lorah, to whom Dr. E. C. Kitchin undertook to assign the said mortgage, and that William F. Kitchin, the appellant, to whom Mrs. Filbert and George K. Lorah undertook to assign the said mortgage, had notice of the appellee's title to the said

instrument at the time when the assignments to them respectively were made.

OPINION BY MR. JUSTICE DEAN, October 17, 1898:

Adam Johnson executed and delivered to Mabry C. Brumbach, as trustee for his wife, Mary, a mortgage on land in Amity township, Berks county; it was conditioned for the payment of $2,300 at his death, without interest. The wife died before the husband, having first made a will, bequeathing the mortgage to her trustee, Mabry C. Brumbach, of which will she appointed him executor. On January 29, 1874, Brumbach assigned the mortgage, for a valuable consideration, to Dr. E. C. Kitchin, his heirs and assigns, which assignment was duly recorded February 6, 1874. On October 24, 1879, Kitchin assigned the mortgage to Charlotte Filbert and George K. Lorah, which assignment was recorded October 24, 1879, and they, on March 19, 1881, duly assigned it to William F. Kitchin, this appellant, which assignment was duly recorded April 28, 1881. On April 4, 1891, Johnson, the mortgagor, died, and by its terms the money secured by the mortgage became payable. At the instance of John Swavely, on March 25, 1893, a scire facias was issued on the mortgage; Swavely alleged that Dr. E. C. Kitchin, the first assignee under Brumbach, had, for a valuable consideration, on December 20, 1875, assigned it by parol to Jeremiah Weaver; that, on December 22, two days thereafter, Weaver made an assignment under the insolvent laws of all his estate, including the mortgage, for the benefit of his creditors, and that his assignees, on July 10, following, had sold the same at public sale to him, Swavely, for the price of $875, which sum he paid to them in cash, and they delivered to him a written assignment of the mortgage on February 12, 1881, which was duly recorded April 30, 1885; that, on the date of the assignment the assignees had also delivered to him the original mortgage. Claiming, therefore, to be the owner, he proceeded in the name of Brumbach, for his use, to trial on the scire facias which had been served on Johnson's administrators, and at May term, 1896, recovered a verdict. William F. Kitchin, the last assignee of the mortgage, appeared at the trial and denied Swavely's right to sue thereon, but the court being of opinion that the latter could use the

legal title of Brumbach to obtain judgment, and that the only
defense the administrators could set up was payment, directed
a verdict for plaintiff, leaving the rights of the respective
claimants to be determined afterwards.   Swavely then had
judgment entered on the verdict, and directed execution to be
issued, when Brumbach presented his petition averring that
the whole proceeding was without his knowledge or consent;
that the real owner of the mortgage was William F. Kitchin,
who derived title by regular assignment through him.    The
court decided that he was a mere dry trustee, and had no right
to interfere, and directed the sheriff to proceed with the levari
facias issued by Swavely.    Then, William F. Kitchin again
came with his petition, reciting his title as before noticed, and
praying the court to set aside Swavely's execution and mark
the judgment to his use.    On this the court awarded a rule
on Swavely to show cause why the prayer should not be
granted, and on hearing of the rule awarded an issue to deter-
mine the ownership of the mortgage as between Kitchin and
Swavely.    At the trial of this issue the court decided that the
only question of fact disputed was, "Whether or not, on De-
cember 20, 1875, Dr. E. C. Kitchin made a transfer of the
mortgage to Jeremiah Weaver, which Weaver accepted, and
which was sustained by the payment of a stipulated valuable
consideration."    On the evidence as presented the jury found
for Swavely, the plaintiff, leaving open only questions of law
arising on the evidence, which the court afterwards, in opinion
filed, decided favorably to Swavely, plaintiff, and discharged
the rule granted at instance of Kitchin to show cause why the
judgment should not be marked for his use.    From that de-
cree Kitchin brings this appeal.

The only questions raised by the errors alleged demanding
notice are two : What legal conclusion is warranted from the
record as between the warring assignees, Swavely and Kitchin?
Did the court err in rejecting the testimony of Kitchin in the
trial of the issue?

The practice adopted by the court below to settle the con-
tention between the parties seems, under the circumstances, to
have been the best one; that is, to have judgment taken in
favor of the mortgagee, Brumbach, and then award an issue to
determine the fact by a jury and the law by the court between

the two equitable claimants.   The form of the proceeding com-
plained of by appellant is not important if it was adapted to
reach the justice of the case ; each side in that form had oppor-
tunity for full hearing on the facts and law, and that is all the
suitor ought to ask.   If the court, without the intervention of
a jury, had undertaken to pass upon and find the facts from
contradictory evidence, appellant, perhaps, might have justly
complained; but he was heard before a jury in the issue di-
rected by the court, and he could have had nothing more before
the same tribunal on the scire facias.   So, the first question is,
what does the record show as to the ownership?   Both parties
claim by assignment, beginning with E. C. Kitchin.   Unques-
tionably, he became the owner on January 29, 1874, by assign-
ment from Brumbach, and this assignment was duly recorded,
and he, by assignment duly recorded, dated October 24, 1879,
transferred it to Charlotte Filbert and George K. Lorah, which
transfer was also duly recorded, and from these last it passed to
William F. Kitchin, this claimant.   But, in this interval be-
tween January, 1874, and October, 1879, to wit: on December 24,
1875, E. C. Kitchin made a general assignment of all his estate
for benefit of creditors to George K. Lorah, and though not
specified in the description of the assigned property this mort-
gage, if the ownership was still in E. C. Kitchin, passed by the
general terms of the deed to Lorah.   But Swavely asserts that
the ownership was not then in Kitchin, because, two days
before, on December 20, 1875, he had assigned it by parol to
Jeremiah Weaver, under whom he claims.   As before noticed,
E. C. Kitchin, as if he had not made an assignment for benefit
of creditors, and was still the owner of the mortgage, assigned
it on March 19, 1881, to Charlotte Filbert and George K. Lorah,
who assigned to William F. Kitchin, this defendant.   Weaver,
under whom Swavely claims, made an assignment for benefit
of creditors, and his assignees transferred it to Swavely, the ap-
pellee.   The record, as held by the learned judge of the court
below, shows a defect in W. F. Kitchin's title, for it shows a
prior assignment of the mortgage to Lorah, assignee for benefit
of creditors.   But this establishes no right in Swavely, for it
shows no title in him at all.   We do not concur in holding the
extreme consequences indicated by the learned judge of the
court below ; that is, that the defect deprived the defendant of

any standing as a suitor.　It was twenty years after the assignment to Lorah for benefit of creditors that Swavely procured a judgment in the name of the legal owner on the mortgage ; in all these years neither the assignee nor creditors, so far as appears, made any assertion of ownership ; it stood open on the record, assigned to E. C. Kitchin ; the estate of the insolvent had been settled, and the assets distributed ; while this lapse of time would not of itself warrant a presumption of reconveyance to the assignor, that fact, with other corroborating circumstances, such as the acceptance by one of the assignees of a subsequent assignment to himself, would have been evidence from which the jury might have so presumed.　This much we may say, that one holding by assignment from E. C. Kitchin has at least a color of title sufficient to give him a right to demand of another claiming the mortgage that he should establish by competent evidence his right.　If Lorah, the assignee of E. C. Kitchin, had been ruled to come in as a party to the issue, and had disclaimed ownership or defaulted in appearance, this being an equitable proceeding, the rights of all parties would have been determined ; as the issue stood, however, assignee Lorah's right is not concluded, for he was not a party.　Notwithstanding the absence of Lorah, the right of William F. Kitchin, as against Swavely, to be heard, could not be denied ; it was his right to demand that the latter be put to proof of the lawfulness of his demand, for as the record stood he was a stranger to E. C. Kitchin's title, under which both parties claimed.

This brings us to the question raised by the second assignment.　Swavely averred, and offered evidence tending to prove, that on December 20, 1875, E. C. Kitchin brought the mortgage to Jeremiah Weaver's house, laid it on the table in the room in which Weaver and two other persons were present, said, " Here is something towards what you have done for me," or " towards my indebtedness," or something like that, and departed, leaving the mortgage there.　There was a writing at some time given by Weaver to E. C. Kitchin acknowledging the receipt, on December 20, 1875, from E. C. Kitchin, of the mortgage, valued at $1,200, and concluding with a promise to " allow the said E. C. Kitchin $1,200 for the same."　This was followed by testimony that Weaver had become accommodation indorser for E. C. Kitchin for a considerable amount ; that the

mortgage remained in Weaver's custody; that it was included as part of the assets of Weaver's assigned estate, and omitted from the inventory of E. C. Kitchin's assigned estate, and that the payments out of Weaver's estate on account of endorse ments of E. C. Kitchin's notes exceeded $1,200, and finally, the evidence as to the failure of Weaver's assignees to sell the mortgage for a number of years, E. C. Kitchin's assignment of it in 1879 and its sale by Weaver's assignees to Swavely. The testimony of D. B. Mauger had already been offered on part of plaintiff and admitted. He testified to the parol assignment of the mortgage by E. C. Kitchin to Weaver, on December 20, 1875, and to having heard all that was said. Then defendant called E. C. Kitchin to prove just what took place at that time, for the purpose of showing that there was no absolute transfer by parol to Weaver. On plaintiff objecting that the witness was incompetent, because Weaver, the other party to the con tract, was dead, the court rejected him. We think this was error, and that E. C. Kitchin, so far as appeared by the record and otherwise, was competent. Both parties claimed that E. C. Kitchin had no interest; plaintiff rested his claim on an aver ment and evidence that the witness had parted with every cent of interest in the mortgage to Weaver, twenty years before the suit; the defendant claimed that he had passed absolutely all his interest to Charlotte Filbert and Lorah, as early as 1879. It was not a colorable release, or extinguishment of interest, executed at time of trial to qualify him as a witness, as in Dar ragh v. Stevenson, 183 Pa. 397, but, in either case, an assign ment when litigation was not even in prospect. The assignment to Lorah was made too in the lifetime of Weaver and put of record, thus, at once affording Weaver an opportunity for at tack. We cannot say that the assignor of the thing in action was wholly without interest, for possibly he would be answer able to the losing assignee on an implied warranty that at the date of the assignment he was the owner of the "thing," as signed, and had not parted with it by prior assignment. We do not pass upon this question, because in an issue to determine it, E. C. Kitchin has the right to be heard. Yet he was com petent to testify under the provision of the act of June 11, 1891, which declares; that, although a party to the thing or con tract in action be dead, the survivor may testify to matters oc

curring between the contracting parties in the lifetime of the deceased, if such matters occurred in the presence or hearing of other living witnesses. We held in Roth's Estate, 150 Pa. 261, that the surviving party under this act did not become competent until the witnesses who were present had testified. Here Mauger had testified to being present and hearing the alleged parol contract. This made E. C. Kitchin competent to testify to what was actually said and done in presence of Mauger, and it was error to exclude his testimony in this particular.

For that reason the decree is reversed and a v. d. n. awarded.

187    612
23 SC ¹221
23 SC 222

187    612
24 SC ¹304
25 SC 185

187    612
27 SC 132
e 27 SC 334
187    612
30 SC 232
187    612
f 33 SC ¹328
187    612
35 SC ³631
35 SC 634
36 SC ² 35
36 SC ³ 36
36 SC ²123

187    612
137 SC ³249